May I please report, my name is Stacey Scolani and I am counsel for the appellate Mayor Gelley in this matter. I would like to reserve two minutes for rebuttal. Surely. I want to begin by hitting head on the overriding theme of Appalachia's Park Pleasant's brief appeal is a challenge to factual findings of the trial court. This is an inconvenient mischaracterization of our position and it's incorrect. In fact, we are happy to accept all of the findings of fact of the trial court. What we are challenging here are four of the trial court's key legal conclusions. This case involves a claim by appellate Mr. Gelley against appellate Park Pleasant for specific performance of a purchase and sale agreement. We know the facts in this matter and why don't you take us through each of the issues that you think are important. I can't accept your adversary's position that implicitly the district court determined that time was of the essence. That's his position. Well, I think because in the judge's opinion, in her memorandum, she specifically says she is not reaching the issue of whether time is of the essence. She expressly says that. Because she concludes that since the contract has language in it that says that all provisions are conditions, then the condition is that the additional deposit needed to be made by September 5th, 2008. So your point is that 3.6, 3.7, and 8.1.1 sub 4 means that, in fact, in addition to the date that the condition was to be met, the date that the condition wasn't met, the date that the condition had to be met was not September 5th, but the closing date. Because that's what the language of the contract is. That's exactly our position, Your Honor. And it's supported by Pennsylvania case law, which is clear that in order for time to be of the essence in a contract, it must expressly state words to that effect. I mean, if you have to have those magic words where courts don't like magic words, why can't it be implicit, according to your adversary, that the covenants are, you know, that their position is that even the judge refused to rule specifically that, in essence, the court held that time was of the essence. Because that's not what Pennsylvania case law says. And you don't say we need magic words, do you? No. Absolutely not, Your Honor. Time of the essence. Those exact words. But was the date bargained for? Did the district court find that the date was bargained for? Yes. Doesn't that make it, doesn't that change the analysis here? I don't think it does, Your Honor, because what the district court found regarding the negotiations was that the seller wanted the due diligence date, whatever it was, to be closer in time, and the buyer wanted the due diligence date, whatever it was, to be further away in time. And so September 5th was selected at the time. But what's important here is that it was the seller who initially approached my client about moving the due diligence date. And that's critical, because that demonstrates that that date, September 5th, is not a magic date for the payment of the additional deposit. But you made a counteroffer, in effect. We don't, well, we disagree with that, of course, Your Honor. Well, but it's different in terms as to what the seller wanted. Well, it was not a difference in terms. It was an inquiry about additional time. And I think what's important there is that the district court really contradicted itself in that regard. There are two emails by Mr. Galley's counsel to Park Pleasant's counsel on the issue of the extension. The first is on August 20th, in which counsel says, counsel for Mr. Galley says, that Mr. Galley would like 30 days after the additional deposit, or excuse me, after Ms. Kleinberg, the owner of Park Pleasant, has had a chance to do her own due diligence, would like those same words appear in the September 3rd email that Ms. Judge sends to Park Pleasant's lawyer. Well, let me ask something. If we were to determine, as you argued, that time was not of the essence in this contract, we don't have to reach any of these issues, do we? That's absolutely right, Your Honor. We would just what? We would land to the district court and direct that specific performance to be granted? Yes, that's correct. So we would not have to go through this offer and acceptance and statute of frauds? That's correct. Any one of our four issues on appeal is dispositive. And if one is decided, the other three do not need to be reached. And that is true of the time is of the essence position as well. What is your response to Park Pleasant's theory that the deadline for payment, the quarter of a billion dollars, was especially critical because if you didn't get that money up, then you could walk away from the deal scot-free without any repercussions? Well, that was what the parties negotiated. I mean, that was the other terms of the deal. The deal was that an initial deposit was made, that there was time to do due diligence, and until an additional deposit was made, Mr. Galley had the right to get his initial deposit back and walk away. That is what the parties negotiated. That was the contract, and there was never any discussion about changing that. So while we accept that the payment of an additional deposit was a condition of the contract, the timing for that is certainly not of the essence here and not material and did not give rise to Park Pleasant's right to terminate the agreement, which of course gets us to our fourth point. And what would have been the consequence if that deposit had been made? Apparently, the judge decided not to make that transfer or to counsel against making that transfer. Is that right? Yes. Counsel's position, Counselor Mr. Galley's position was that the additional deposit did not need to be made because the extension existed. And what would have been the effect if it had been made? If the initial deposit had been made, then Park Pleasant would have no legal justification to have terminated or attempted to terminate the following week. They would have had no choice but to close. And the other side would have been bound to go ahead. Exactly. That's correct. And that gets us to our fourth point, which is the issue of the termination and the fact that there was no termination in this situation. The district court found that a letter from Park Pleasant's attorney, Mr. Creckstein, on September 10th was intended to be proper termination under the purchase and sale agreement. Well, it wasn't. Not only did it not comply with the terms of the agreement, which notably the district court wants to enforce strictly in some instances and not in others, but the author of the letter himself, Mr. Creckstein, testified at trial unequivocally that his September 10th letter was, quote, not an attempt to satisfy the notice requirement for termination under the purchase agreement, end quote. If the author of the letter says his intent was not to terminate the agreement, I don't know how the district court can find an intention otherwise. And Mr. Creckstein then also testified that he was unaware of any other written termination notice. Are we under 8.1 and 8.2 of the agreement? Is that what we look to in making this determination? Yes, Your Honor. 8.1, 8.2, which is the procedure for termination, which requires that written notice be given by a party to a party under certain circumstances. And in this case, Mr. Creckstein was the lawyer for Park Pleasant, and he sent his letter to Ms. Judge, who was the lawyer for Mr. Galley. If we determine, and I don't know what we're going to determine, but if we determine that the district courts cannot offer determination when Judge herself admitted that her email created a power of acceptance. Because, Your Honor, it's classic attorneys negotiating over terms here. What I think is critical about her September 13th email is that nothing in there said we will only do an extension if you do it on our terms, as I've set forth here. That's not what it says. But did it change the terms of the offer? It did not change them. It inquired about additional terms. But it did not accept. It wasn't an acceptance. It was not. And it was different from the offer. Changing the dates. It was an acceptance. It was an agreement to give an extension. That was what was accepted by Ms. Judge. And then it was an inquiry regarding whether they would consider dates other than what Ms. Judge suggested was October 2nd, as opposed to... Why wasn't that a counteroffer? Because of the way that it's worded. It says the buyer is willing to modify the time periods in the agreement of sale. Okay? So that accepts the notion that an extension is agreeable. And then it goes on to say, what would like to have until Thursday, October 2nd, 2008, to complete the due diligence, so that he has at least three weeks following his discussion with the consultants. The buyer would be willing to amend the agreement of sale as files. There's nothing in there that says... Well, you want to have it both ways, no? I'm sorry? It sounds like the lawyer wanted to have it both ways. That is, she didn't want to comply with the original term and is making another suggestion. But she says it's not a counteroffer. Then what is it? It's an inquiry about whether the parties can come to a different agreement. Everybody's agreed on step one, there's going to be an extension of time. It's step two, where the parties are still talking about things. The offer's still out there to maybe September 26th. And Mr. Kelly's lawyer is saying, well, okay, but how about October 2nd? Was there an agreement that there should be an extension of time? We believe that there was. We absolutely believe that the conduct of Park Pleasant and its owner, Ms. Kleinberg, establishes that, in fact, there was such an agreement. I'm sorry, Your Honor? Under conveyancing law, even though the contract doesn't have times of the essence, or mandatorily you have to accept that as the terms of the contract, you could send out a letter even though the contract doesn't say times of the essence and say I'm making this closing date or this time of the essence 30 days following the date that was originally scheduled. You can do that under Pennsylvania law, can't you? I think that's probably right. I think there are some facts and circumstances that might apply. Well, generally speaking, this is my experience, so I'm probing you on Pennsylvania law, that even though the contract doesn't say time is of the essence, you can make time of the essence by giving, Your Honor, serving 30 or 60 days to get up the dollar, to get up the deposit or whatever, until it's over, correct? I think that's right. If your agreement requires modifications to be in writing and signed, and you have signed writing, that's exactly right. Why should we conclude that the September 5th voicemail provided adequate notice that Park Pleasant would insist on performance by 5 p.m.? Because that's not what the substance of the voicemail was. Well, could that be considered a demand? This is my demand on making the contract time of the essence, even though it wasn't time of the essence originally. I don't agree, Your Honor, and I think that given the substance of that voicemail and when you look at it with sort of the other items that were in Ms. Kleinberg's emails that the judge looked at, that's losing the focus. The substance of that voicemail and the things that the district court focused on in the emails regarding the extension was Ms. Kleinberg's sudden decision that she no longer liked Mr. Gallagher as a person, and so she didn't want to go forward with the deal. But on the day of that voicemail and on all the emails that preceded it, she had no right to terminate the deal. So it really does not matter what her state of mind was in terms of going forward with the deal. That's all superfluous because she had no right at that time. Okay. I do have one other question. If we find that the district court was improper in saying that the agreement was terminated, must we, in sending it back, order specific performance? I understand that you'd like us to, but that's not sort of an a-for-sure-I requirement of making that determination that the decision that there was a termination was made. I think it might be, Your Honor, because the point is that the contract could not terminate automatically on breach. There had to be a step that took place. So if the finding is that there was no termination, then I think the conclusion is that Park Pleasant waived whatever breach may have existed and therefore Mossman fell into closing. Tell me, before you leave, tell me again, why the crackstein call to judge on September 5th, that there was no reason to extend the due diligence date, why didn't that resolve any ambiguity that may have existed at that point and put the judge on notice? Because the purpose of him saying that was, he's not sure that Ms. Kleinberg wants to go forward with the deal. And at that time, 2 o'clock on September 5th, she had no right to back out of the deal. And then he concludes his call by saying, we'll talk on Monday. And then he can't be reached for the rest of the weekend. So I think that from what we know of the voicemail and we know that it was not capped and so it was best recollections of what was said, the focus of it was Nancy doesn't want to sell anymore. But Nancy didn't have the right to decide not to sell at the time Mr. Crackstein left that message. Okay, good. Thank you very much. Thank you. Good. Mr. Bagman. Good morning. Thank you, Your Honor. May it please the court. My name is John Bagman. I'm a counsel for the Park Cousin. The Appalachian cross appeal. If I may request, I'm not sure, if it would please the court, but I would like to request just one minute for rebuttal on the cross appeal issue. Fine. I'm not sure it would be necessary. I'd like to go to Judge Reno's last question to counsel. Must you order specific performance if you conclude that time was of the essence and the answer to that question is no. As a matter of fact, my position on that is... That wasn't my question. I'm sorry, if time was of the essence, must you order specific performance? Go ahead. I guess the point that I'd like to make is that specific performance is an equitable remedy. It's an equitable remedy based on the facts. In every single case discussing these issues, it's an equitable remedy based on the facts. In almost every case cited by counsel, those were cases decided by judgment on the pleadings where the facts weren't even an issue. In this case, the district court took pains to make careful findings of fact. And there are a couple of findings of fact that are overarching in this case. The finding of fact that Gelley and his counsel were not duped by Park Pleasant and Nancy Clyburn. They were not misled in any way. They knew specifically, and this is what the district court found as a fact, that the payment of the additional deposit was a deadline by 5 o'clock. They knew it was a deadline. I can't accept that. If your position is that this contract is not a time-of-the-essence contract, which you're conceding by nature of what you're arguing here, my position is that then we're in a question of under-substantial performance. That's the only question that the case, or bad faith, that in equity we should not specifically perform this. So you've got to show, if time is not of the essence and you can't show any bad faith, it seems to me they could close the contract. Your Honor, I don't concede that time is not of the essence. The district court said, and I have to admit that she didn't decide that issue, but I think she decided implicitly. She decided implicitly in all of her findings of fact. She found as a fact that the parties knew that the condition of the payment was unambiguous and absolute. She found that they knew that was a condition. Yeah, but that doesn't make any difference. Under specific performance, every contract for a closing has times for payments and for mortgage commitments and so forth. These are set forth, they're precedents, they're conditions. If time is not of the essence and you can't show any bad faith on the part of your adversary, why should we not order the equitable remedy? Well, I think because equitable remedy is within the discretion of the finder of fact, and I don't think this court sits as a finder of fact. What fact says the district court found that the state had bad faith on the part of the buyer? Well, that faith was argued. The district court didn't get to it because she didn't find it. We argued that the contract was repudiated. Not only by the dinner, and this is a point that we may not brief, but that the district court didn't address, we argued that there was bad faith in that Nancy Klineberg repeatedly asked for adequate assurances after the dinner. Will you pay the price? Will you pay the price? Will you pay the price? And he repeatedly said no. The repudiation of the contract, the mortgagatory breach, it was not only at the dinner, but it was by the repeated requests for adequate assurances which were never given. Did you brief that? Yes, we did, Ron. We did? We did. The failure to... The district court didn't address all the repeated requests for will you pay, will you pay. We did brief it to her, but she didn't address that in her opinion. We briefed it to you. Your position is that the district court implicitly determined that time was of the essence. Yes, Ron. Well, how did you do that when the district court specifically said, expressly, that she's not ruling on that question? I think her finding... She's talking about both sides of her mouth. I think that the finding, that the condition was unambiguously understood as a deadline, and that Galileo's lawyer deliberately ignored it at their own risk. I think that implicitly says that that condition was so important to the contract that the failure of that condition gave Hart-Cousins the right to terminate. Yeah, but every contract for a closing has those deadline dates. Every single one. Now, I've seen... This was a closing, Ron. This was... My sale, the same thing, they were buying a business here. Now, what is the difference between those contracts that we've all seen, which have specific dates for deposits, for good things, and this contract here doesn't seem to be any different to me. Well, Your Honor, I think it is different in this respect. The September 5th date was an important date because, I think, as your question pointed out, up until September 5th, the buyer was not bound. The buyer could walk away with no financial repercussions. And the seller was bound. The seller could not sell to anybody else. Extending that time period by which the seller was bound but the buyer not, the buyer was not getting any adequate assurance. That's the contract the seller made. If they didn't like it, they didn't have to have that permission in the contract. And if they wanted to make it a deadline, all they had to do was put in the contract. Time was of the essence. Or, as I indicated to your adversary, after the closing did not occur, you could have sent a letter out saying 30 days from now is the deadline. Time is of the essence. Well, I agree with that. And they never sent that letter out. They could have put in time is of the essence. But as the Taneyborg Court pointed out, those words are not magic words. The whole contract, the import of the contract, can implicitly create the necessary influence that time is of the essence. The real question is how is this different than any other contract? Every other contract has milestones or dates that some important event is going to happen as you work towards the closing. How is this any different than any other contract? The most different is the parties started to negotiate over extension of that period. They started to negotiate because of Mr. Galli's repudiation. Well, if that's your argument, then anyone on your side could have invoked the magic words or could have invoked words to that effect, which would make it easier for us to see what had occurred and come to the conclusion you want us to come to, which is odd, particularly since the district court didn't come to that conclusion. Well, I agree with you. I would have preferred the district court came to that conclusion. But keep in mind, in finding that time is of the essence, this court can look to evidence in the record that need not just base its decision on what the district court found as a matter of law. Under Pennsylvania law, the words time is of the essence can create time is of the essence, but also the totality of the contract can create it, the language of the contract. As a matter of fact, the standing law court said if you don't use the words time is of the essence, you better make sure you put in conditions. You better make sure you have conditions. Let's go to the notion of conditions because there's something I don't understand about this situation. We look at 3.7 and 8.11 sub 4 of the agreement. As I understand it, the district court says by the deposit not being made by September 5th, the condition is violated and that triggers the right to terminate. But even if a condition, even if that condition is not fulfilled then, it would appear from the agreement that it's only if a condition is not filled by the closing date. Tell me about the language and tell me why that's not it. I think you're looking at the wrong paragraph. Not 3.7. Go back to 3.6. 3.6 starts out with the obligations of the seller to complete closing. If you go to the page, it's 13 of the contract which is the top of the page. The seller's obligation under this agreement doesn't have the obligation to close if the... Let's go to 3.6. 3.6.1 says, buyer shall have performed and complied in all materials and respects with all of its obligations under this agreement which are to be performed or complied with by it prior to on the closing date. Prior to. That's the language. The prior to is that the obligation to make the deposit was for September 5th. He had the obligation to comply with that prior to closing. At this extent, to interpret it otherwise would mean that it was the closing of the September 5th date was meaningless. If Gelly could really say, well, I'm not going to do that. I'll just wait until closing to do it. You don't have any recourse. That would make that meaningless. You have to interpret that meaning the obligation to make the deposit on September 5th had to be complied with prior to closing. In this case, the date stated in the contract. It's your language. You've got to embody it. You've got to put it on. Right? It's or on. Well, I think if they're closing date obligations, they have to be complied with by closing. If they're obligations that have to be complied with prior to closing, they have to be complied with prior to closing. That would mean that we're supposed to look at this language prior to or on and this gets us to time of the essence. And if that's so, then I think we've got to redo contract law. Your Honor, again, time of the essence can be found by the conduct of the parties. And in this case, this entire dispute relates to a dispute over the purported extension of your very date we're talking about. It was critical by nature of the contract. It was critical by the conduct, the clear conduct of the parties. Gelli asked his attorney on Thursday, September 4th, what's the deadline? What's the deadline? She said it's tomorrow at 5 o'clock. Look, let me ask you this. If, um, is it Creckstein? Is that the one you asked? Yes. Okay. If Mr. Creckstein says under oath that his September 10th letter is not a termination letter, shouldn't that inform us with regard to a determination of whether September 5th was time of the essence? Because if it was, then presumably he would consider that correspondence to be a termination letter. Well, let me be specific on that. First of all, Creckstein's letter of September says this shall confirm the seller's termination because the letter says it's a termination letter. I can't remember why would he say two times. I think you just heard the question correctly. No, no, no. But there were two different questions, right? And he gave the same answer twice. I presume you're not going to throw your prior counsel under the bus now and say... I have to say I don't know why he said that. He said this will confirm termination. I think that he said it because he didn't send it also technically to Gelley himself. I think that's why he said it. But that wasn't the subject across his indication. But the letter itself says this will confirm termination. And clearly that's what he was trying to do. Now, he didn't send it to Gelley directly. But the fact of the matter is Gelley got it directly. It was sent to Gelley's counsel and Gelley's counsel sent it to Gelley. And as we already did in our brief, that is technical compliance. The contract says sent and as long as it's received and it was received, there is technical compliance over that subject. So the lawyer drafting the letter should disregard the fact that in response to two questions he said it wasn't. I don't think you should disregard it, Your Honor. I think what you can do is interpret his meaning. He didn't send it to Gelley so it wasn't in conformance with... he didn't mean it to comply with the notice requirements but in fact the notice requirements were complied with because Judge sent it to Gelley. It was sent and it was received. The sent and received doesn't say sent by whom. Gelley's own lawyer gave it to him the very day and that's when Gelley got it. It was sent to him, albeit not by Christie. If we determine that time was not of the essence, either expressly or by implication, worst case scenario, what is your backup argument after that? What is your next argument? Well, the statute of frauds precludes specific performance in this case. The statute of frauds says that it has to be complied with and signed by the party to be charged, signed by the party. There was no waiver of the signature in this case. All the cases that we're talking about, by the way, that talk about equity, none of them raise the statute of frauds. The statute of frauds runs flat into the face of all these equity requirements and the... The statute of frauds, in your position, the statute of frauds would prevent if this is not time of the essence specific performance being... Yes. Now, just straightened that out for me. Because the law is that if you can get money damages, you can use it as a shield but not as a sword. The statute of frauds precludes specific performance. It doesn't preclude an action for money damages, for breach, but it precludes specific performance. What would you have besides statute of frauds? Pardon me? Any other backup argument besides statute of frauds that time is not of the essence? I think that the whole point is that if a finding of whether time of the essence is necessary, that is a decision that should be made by the district court based on the facts and not by this court. But she's rejected that already. Pardon me? But she's rejected that already. Well, she hasn't made it. She said she didn't need to. She didn't get to it. She didn't reject it. She didn't say it wasn't of the essence. She said, I'm not getting it. Well, she rejected it because she refused to enforce the contract. Well, she implicitly rejected it. She refused the prior to enforce the contract. She rejected the plaintiff's case. Yes. Now, besides the statute of frauds, what other backup argument would you have, sir? If time is, we determined time was of the, was not of the essence. Well, there was a breach of condition   which was probably done. It's the district court's way of doing it. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Anything else? Nothing. Good. Mr. Mabee, thank you very much. Ms. Scrivano? Yes. Very briefly, your honors. Two points. First, I think on the statute of frauds issue, of course, that's not an issue here because the argument of statute of frauds applies because there was one component of the sale that involved the sale of land. It was a minor component. The purpose of the sale agreement was the sale of a business. So the statute of frauds is completely out of the question here. The second point that your honor raised was this issue of there being no bad faith. And I think that's a good point. And the issue of repudiation was not briefed and is not on appeal before this court. It was rejected by the lower court and it was not raised as a cross-appeal issue. And even under the circumstances of the facts involving repudiation, there was no allegation of bad faith. It was simply an allegation to whether the contract had been anticipatorily repudiated and the district court rejected that. But certainly there's been no facts established and no finding by the district court regarding any bad faith on the part of my client. Thank you. Good. Thank you, District Attorney. Mr. Baggett, did you want to respond? Good. On the statute of frauds, the district court points me to a trial where the justice said primarily that the district court did not believe the obligations of the statute of frauds. This was two city blocks, buildings on two city blocks, and a huge part of it was the facility on which the nursing home sat. And don't be confused, the $1 million for the land, that was the extra land. The facility itself sat on a city block with the nursing home itself, and that was the bulk of the sale, so it didn't involve the sale of land in the statute of frauds as happened there. Good. Thank you. The case is very well argued. We take the matter under advisement. We thank counsel very